UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOCTORS HOSPITAL 1997 LP, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-08-3340 |
| | § | |
| BEAZLEY INSURANCE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Pending before the Court is the defendant Beazley Insurance Company, Inc.'s (Beazley) motion to dismiss and motion for summary judgment (Docket Entry No. 89). The plaintiffs Doctors Hospital 1997, L.P. ("Doctors Hospital"), GE HFS Holdings, Inc. ("GE") and Tidwell/Parkway Property Holdings, L.P. (collectively the "plaintiffs") submitted a response to this motion (Docket Entry No. 90), Beazley filed a reply to the plaintiffs' response (Docket Entry No. 93), and the plaintiffs filed an opposition in response to Beazley's reply (Docket No. 98).  Further pending before the Court is Beazley's motion for partial summary judgment (Docket Entry No. 94).  The plaintiffs submitted a response to this motion (Docket No. 107).  Also pending before the Court is Beazley's motion for summary judgment (Docket Entry No. 97).  The plaintiffs submitted a response to this motion (Docket No. 103) and Beazley submitted a reply to the plaintiffs' response (Docket No. 104).  Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS these motions in part and DENIES these motions in part.

## II. Factual Background

Doctors Hospital is an acute care hospital located in Houston, Texas. GE is a lender to health care entities that has previously made loans to Doctors Hospital. To obtain these loans, Doctors Hospital pledged its property and future business income as collateral. It further agreed to insure the collateral and have GE named as an additional insured party.

Beazley is an insurance provider. In March 2008, Doctors Hospital purchased an insurance policy from Beazley covering, among other things, structural damage to the hospital and losses from business interruption (Policy Number V15KQM08P, hereinafter the "policy"). As described below, the plaintiffs have filed a lawsuit against Beazley alleging various acts of malfeasance occurring after it made a claim under the policy.

In September of 2008, portions of the Doctors Hospital facility were severely damaged during Hurricane Ike. The storm caused economic harm from physical damage to the facilities and lost income associated therewith. Shortly thereafter, Doctors Hospital filed a claim with Beazley for these losses.

In October of 2008, Beazley made an advance payment on the insurance proceeds for $1,000,000 by checks made out to Doctors Hospital and "General Electric As Agent." Shortly thereafter, GE and Doctors Hospital began to argue about the proper allocation of the $1,000,000 and future insurance payments. Thus, Doctors Hospital sued GE and Beazley in state court. On November 5, 2009, the state court issued a temporary restraining order directing Beazley to fund a $1,500,000 advance to Doctors Hospital. The suit was then removed to this Court.

After removal, the dispute between GE and Doctors Hospital was settled through mediation before Chief Bankruptcy Judge Marvin Isgur (S.D. Tex.). The terms of the agreement were memorialized in a Binding Term Sheet (the "BTS"). Pursuant the BTS, the parties agreed to the allocation of future insurance payments and to future loans from GE to Doctors Hospital. All claims against GE were subsequently dismissed with prejudice. The parties continued to contest the amounts due under the policy.

In March of 2009, the present (second amended) complaint was filed. It added GE as a co-plaintiff and maintained Beazley as the sole defendant. All relief sought arose from the plaintiffs' assertion that "[d]espite [Beazley's] obvious liability well beyond the amounts advanced, Beazley refuse[s] to make additional payments required under the Policy." Specifically, the plaintiffs alleged breach of contract, breach of good faith and fair dealing, and violations of the Texas Insurance Code. They further sought declaratory judgment and equitable relief.

### III. Contentions

#### A. The Defendant's Contentions

Beazley requests dismissal or summary judgment of the plaintiffs' claims. Initially, it argues that GE was added as a plaintiff without adhering to the procedural requirements of Federal Rule of Civil Procedure 24 ("Rule 24"). Further, Beazley asserts that Texas law and the policy's provisions prohibit assignment of these insurance claims, or in the alternative, that GE is not an additional insured, mortgagee or loss payee under the policy. It also states that, even if GE is covered, the policy grants GE no right to sue. Moreover, the BTS is an illegal Mary Carter agreement and violates a criminal statute, alleges Beazley. It also seeks summary judgment on the plaintiffs' equitable claims.

Lastly, Beazley requests summary judgment construing the phrase "sublimits" (as used in the policy) to mean a limit on coverage for a particular type of harm within the bounds of the overall policy limits.

### B. The Plaintiffs' Contentions

The plaintiffs argue that both dismissal and summary judgment of their claims are improper. Initially, they state that GE is an additional insured, lost payee and mortgagee under the policy and that Beazley has agreed to this. As such, the plaintiffs argue that GE has standing to assert claims without an assignment by Doctors Hospital. Further, the plaintiffs state that these claims are not prohibited by the policy. Also, they assert that the BTS is not a Mary Carter agreement, nor does it violate the barratry statute. Moreover, equitable relief is an appropriate remedy in the case at bar, argue the plaintiffs. Lastly, the plaintiffs proffer that the construction of the term "sublimits" is moot.

### IV. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must go beyond the

pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. Fed. R. Civ. P. 56(e). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs*., 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52).[1]

**V. Analysis & Discussion**

    **A. GE, Rule 24 and Rule 15**

After mediation between GE and Doctors Hospital, GE was dismissed as a defendant in this case. Subsequently, in March 2009, GE was "added" as a plaintiff through an amendment to Doctors Hospital's complaint.

In its first point of argument, Beazley states that "[u]nder Rule 24, GE HFS was required to file an intervention, requesting permission to appear in the case [prior to

---

[1] The Court notes that a portion of Beazley's first motion does not seek summary judgment, but rather is captioned as a motion to dismiss. To the extent that this motion should not be addressed under the summary judgment standard, the appropriate standard is addressed and applied below.

appearing as a plaintiff.]"[2]  Beazley argues that "the Court did *not* give GE HFS permission to intervene in the case as a plaintiff" and therefore, it is not a proper party to this lawsuit.

Contrary to Beazley's position, the plaintiffs state that Rule 15 (dealing with "Amended and Supplemental Pleadings") governs their attempt to add GE as a plaintiff by amending the compliant.[3]  Based on this premise, the plaintiffs argue that "[s]o long as an amended complaint is filed before a responsive pleading, Rule 15 permits the addition . . . of parties without leave of the court."  Were this the applicable standard, the plaintiffs would have satisfied it.  *See Brown v. Kastle Sys. of Tex. LLC*, No. H-08-02888, 2009 WL 3100964, at *1 (S.D. Tex. Sept. 23, 2009).  However, in discussing whether an amended pleading that added a plaintiff should be treated as an intervention, the Fifth Circuit has stated:

---

[2] Rule 24, in pertinent part, states:

> (a) Intervention of Right [-] On timely motion, the court must permit anyone to intervene who:
>> (1) is given an unconditional right to intervene by a federal statute; or
>> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> (b) Permissive Intervention.
>> (1) In General [-] On timely motion, the court may permit anyone to intervene who:
>>> (A) is given a conditional right to intervene by a federal statute; or
>>> (B) has a claim or defense that shares with the main action a common question of law or fact . . . .
>>
>> (3) Delay or Prejudice [-] In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights . . . .

[3] Federal Rule of Civil Procedure 15 provides, in pertinent part that:

> (1) Amending as a Matter of Course [-] A party may amend its pleading once as a matter of course:
>> (A) before being served with a responsive pleading; or
>> (B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.

> [A] court is not bound by how a party labels its motion. Obviously, "[t]he relief sought, that to be granted, or within the power of the court to grant, should be determined by substance, not a label". *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir.1996) (en banc) (alteration in original; internal quotation omitted). As noted, this principle is more than well established. *E.g.*, *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002) ("substance of the plea should control, not the label"). In this regard, *courts have applied intervention or joinder standards to motions to amend when plaintiffs have sought, by that means, to add claims of additional parties*. *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978) (applying Rule 24 intervention standards); *Trombino v. Transit Cas. Co.*, 110 F.R.D. 139, 141 (D.R.I. 1986) (applying Rule 19 joinder standards).

*Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 560 (5th Cir. 2003) (emphasis added). Thus, as the plaintiffs are attempting to add the claims of a new plaintiff (GE) via amendment, their actions are more in the nature of an intervention than an amendment. Accordingly, Rule 24 is applicable to the case at bar.[4]

As properly noted by Beazley, under Rule 24 a party must file a "timely motion" to intervene. The plaintiffs have not expressly satisfied this standard. However, the Fifth Circuit has held that, in its discretion, a district court can allow intervention by a party that "did not formally file a motion to intervene, as specified in Rule 24[] . . . ." *Farina v. Mission Inv. Trust*, 615 F.2d 1068, 1075 (5th Cir. 1980); *Liberty Surplus Ins. Cos. v. Slick Willies of Am., Inc.*, No. H-07-0706, 2007 WL 2330294, at *1 (S.D. Tex. Aug 15. 2007) (unreported opinion) ("The Fifth Circuit has permitted intervention even in the absence of a motion to intervene, citing Federal Rule of Civil Procedure 8(e)(1) ('[n]o technical forms of pleadings or motions are required') and Rule 8(f) ('[a]ll pleadings shall be so construed as to do substantial justice')." (citation omitted) (insertions in original)). Due to GE's constant presence in the case at bar (and the relative obviousness of its interest in

---

[4] *See also* Black's Law Dictionary 897 (9th ed. 2009), which states that an intervention is "[t]he entry into a lawsuit by a third party who, despite not being named a party to the action, has a personal stake in the outcome . . . . The intervenor sometimes joins the plaintiff in claiming what is sought . . . . "

the insurance proceeds), the Court will exercise its discretion to allow intervention without an express pleading.[5]

### B.  GE HFS and Standing to Assert Policy Claims

In its motion for summary judgment, Beazley asserted that GE could not bring claims against it because both the policy and Texas law precluded the assignment of Doctor Hospital's insurance claims to GE. The plaintiffs rebut by arguing that they were entitled to proceeds under the policy without an assignment. The parties' positions on the plaintiffs' arguments are addressed below.

#### 1. The "on file with the Underwriter" Requirement

Pursuant the policy, Beazley will make payments for insured-against losses to loss payees or mortgage holders who are "on file with the Underwriter [Beazley]." GE did not appear on the original policy. As such, the parties contest whether subsequent acts by the plaintiffs were sufficient to place GE "on file with the Underwriter." This phrase was not defined in the policy.

Beazley argues that "loan payees and mortgagees must appear on the schedule of Mortgage Holders and Loss Payees on file with Beazley" to be recognized as an insured. Under this construction of the policy, it argues that GE is not entitled to insurance proceeds because it was not on a schedule of insured parties. Thus, Beazley seeks summary judgment on this issue. In contrast, the plaintiffs argue that a simple request to add a party to the policy, not satisfaction of any formalistic requirement, puts a party on file with Beazley. As such, the parties proffer differing interpretations of the phrase "on file with the Underwriter."

---

[5] To the extent that Beazley believes that the plaintiffs have not satisfied the requirements of Rule 25(a) or 25(b), the Court is willing to entertain arguments for reconsideration.

A motion for summary judgment should be granted if a proposed construction represents the "certain or definite legal meaning" of a contract. *D.E.W., Inc. v. Local 93, Laborers' Intern. Union of N. Am.*, 957 F.2d 196, 199 (5th Cir. 1992) ("If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and this Court will construe the contract as a matter of law."). Thus, in applying Texas law, the Court must determine if Beazley's proposed construction is the *only* logical meaning of the phrase "on file with the Underwriter". *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980) ("[A] contract is ambiguous only when the application of the applicable rules of interpretation to the instrument leave it genuinely uncertain which one of the two meanings is the proper meaning."). In making this evaluation, the Court should look to pertinent rules of contractual interpretation, including:

1. Construe the agreement as a whole;
2. Give each word and phrase its plain, grammatical meaning unless it definitely appears that such meaning would defeat the parties' intent;
3. Construe the agreement, if possible, so as to give each provision meaning and purpose so that no provision is rendered meaningless or moot;
4. Express terms are favored over implied terms or subsequent conduct; and
5. Surrounding circumstances may be considered—not to determine a party's subjective intent—but to determine the appropriate meaning to ascribe to the language chosen by the parties.

*McCarty v. Montgomery*, 290 S.W.3d 525, 532 (Tex. App.—Eastland 2009, pet. denied).

Beazley does not address any of these maxims of construction in its briefing. Further, the Court does not see any immediate reason why these rules of interpretation lead to a necessary conclusion that Beazley's construction is correct. As such, Beazley

has not established that its proposed construction is the "definite legal meaning" of the policy. Accordingly, summary judgment is not proper on this issue.

## 2. Giving Notice to the Underwriter

In its next argument, Beazley contends that, regardless of the construction given to the phrase "on file with the Underwriter," the plaintiffs have failed to satisfy this requirement with regards to GE. Specifically, Beazley states that "GE asserts it was 'on file' with Beazley because of an e-mail from GE HFS's agent, Business Insurance Distributors ('BID') that was ultimately forwarded to Beazley. However, because of the insurance contract between Beazley and the Hospital, Beazley may only act on . . . requests initiated by the Hospital." The plaintiffs counter by arguing that, through a chain of emails originating with Doctors Hospital's CEO, Beazley received a request to add GE to the policy.

On this issue, "[s]ummary judgment is appropriate if a reasonable jury could not return a verdict for [Doctors Hospital.]" *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Beazley cannot satisfy this standard and thus, summary judgment is not proper.

As referred to previously, the plaintiffs claim that Beazley was given sufficient notice to add GE as an insured party. Specifically, in making this argument, it refers to: (1) emails between representatives of Doctors Hospital (e.g. Max Ludke) and Kelly Kammerdiener (an employee of Unimark, an agent of Doctors Hospital) discussing the addition of GE, (2) subsequent emails between Kammerdiener and Tony Greer (an employee of Southwest Risk, Beazley's producing agent) discussing the same, and (3)

subsequent emails between Greer and representatives of Beazley (e.g. Becky Gatzke) discussing this issue. Such summary judgment evidence is sufficient to, at minimum, allow a reasonable jury to return a verdict (on this issue) for the plaintiffs. Accordingly, summary judgment is improper.

### C. The Binding Term Sheet and Mary Carter Agreements

As described above, GE and Doctors Hospital memorialized the terms of their mediated settlement in the BTS. Beazley alleges that the BTS is a Mary Carter agreement, which is void as against public policy. To this end, Beazley points out that, after settlement of the claims between GE and Doctors Hospital, GE retained an interest in this suit and will participate in the litigation. Accordingly, Beazley's believes that summary judgment is proper on this topic. The Court disagrees.

> As stated by the Court of Appeals of Texas:
>
> The classic Mary Carter Agreement exists when the settling defendant retains a financial stake in the plaintiff's recovery and remains a party at the trial of the case. *Elbaor v. Smith*, 845 S.W.2d 240, 247 (Tex. 1992). It presents to the jury a sham of adversity between the plaintiff and a settling defendant, while these parties are actually allied for the purpose of securing a substantial judgment for the plaintiff and, in some cases, exoneration for the settling defendant. *Id*. at 249. These types of agreements tend to promote litigation rather than settle it and distort the trial against the nonsettling defendants. *State Farm v. Gandy*, 925 S.W.2d 696, 709 (Tex. 1996).

*Turoff v. McCaslin*, 222 S.W.3d 664, 666–667 (Tex. App.—Waco 2007, no pet.); *see also* Ray J. Black, Jr., *Mary Carter Agreements are Void in Texas as Contrary to Public Policy: Elbaor v. Smith, 845 S.W.2d 240 (Tex. 1992)*, 35 S. Tex. L. Rev. 183 (1992). Texas courts have further noted the "pernicious effects" of Mary Carter agreements, including: "skewing the trial process, misleading the jury, promoting collusion among nominal adversaries, and creating the likelihood that a less culpable defendant will be hit

with the full judgment." *In re Seven-O Corp.*, 289 S.W.3d 384, 391–92 (Tex. App.—Waco 2009, no pet. h.) (citing *Elbaor*, 845 S.W.2d at 249–50) (internal citations omitted). The above attributes and effects of a Mary Carter agreement are not present in the BTS, and as such, the Court will not grant summary judgment on this issue.

Instead of a creating a "sham of adversity between the plaintiff and a settling defendant," the BTS aligns the insured plaintiff and a financially interested party against a defendant insurer in a dispute over insurance proceeds. The agreement does not represent an attempt to "secure[] a substantial judgment for the plaintiff and . . . exoneration for the settling defendant." There is no possibility that GE seeks to be exonerated in the present litigation because all claims against it were settled in mediation. Further, as the claims against GE were distinct from those against Beazley, there is no possibility that GE continues in the litigation as a sham defendant because the causes of action against GE are no longer present. Lastly, none of the pernicious effects of a Mary Carter agreement are present in this case because the plaintiffs and defendant are aligned accordingly to the logical interests (insured vs. insurer). As such, there is no collaboration among nominal adversaries or other collusive activity. Accordingly, the BTS is not an illicit Mary Carter agreement and summary judgment on this issue is improper.

### D. The Binding Term Sheet and the Barratry Statute

In its next point of argument, Beazley seeks a summary judgment declaration that the BTS is invalid because it constitutes criminal unauthorized practice of law. Specifically, it cites to Texas Penal Code § 38.123(a), which, in pertinent part, reads:

> A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person . . . enters into any contract with a third

12 / 20

>person which purports to grant the exclusive right to select and retain legal counsel to represent the individual in any legal proceeding.

Beazley points to paragraph eight of the BTS as violating this statute. That paragraph provides that "[GE] will receive absolute and full discretion to cause the prosecution and/or settlement of claims (in its name and in the name of [Doctors Hospital]) against [Beazley]. [Doctors Hospital] will cooperate with [GE] with respect to the prosecution of these claims." To determine if this clause constitutes the unauthorized practice of law, the exact meanings of the BTS and the statute must be ascertained.

"In interpreting a statute, our goal is to ascertain the legislature's intent by examining the statute's plain language." *Ross v. Union Carbide Corp.*, No. 14-07-00860-CV, 2009 WL 2589394, at *6 (Tex. App.—Houston [14 Dist.] Aug. 25, 2009, pet. filed) (citing *City of DeSoto v. White*, 288 S.W.3d 389, 394 (Tex. 2009)). Likewise, under basic principles of contract interpretation, "a contract is to be interpreted in accordance with its plain language." *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 133 (Tex. App.—El Paso 1997, pet. denied) (citing *Eagle Life Ins. Co. v. G.I.C. Ins. Co.*, 697 S.W.2d 648, 650 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)). As described below, application of these maxims establishes that paragraph eight does not violate § 38.123(a).

Pursuant to its express terms, § 38.123 deals with contracts that "grant the exclusive right to select and retain legal counsel to represent the individual." In contrast, paragraph eight expressly deals with "discretion to cause the prosecution and/or settlement of claims [against Beazley.]" Under a plain language analysis, paragraph eight does not attempt to assign the right to select or retain counsel. It deals with settling claims, and the penal statute pertains to choosing attorneys. Notwithstanding Beazley's

naked assertions to the contrary, these are different things. As such, summary judgment is not proper on this point.

### E. The Plaintiffs' Equitable Claims

#### 1. Equitable Subrogation

"Subrogation is the right of one who has paid an obligation which another should have paid to be indemnified by the other." *Tex. Ass'n of School Boards, Inc. v. Ward,* 18 S.W.3d 256, 258 (Tex. App.—Waco 2000, pet. denied) (citing *Employers Cas. Co. v. Dyess,* 957 S.W.2d 884, 886 (Tex. App.—Amarillo 1997, pet. denied)). "Equitable subrogation is a 'legal fiction' whereby an obligation that is extinguished by a third party is treated as still existing to allow the creditor to seek recovery from the primarily liable party." *Bennett Truck Transp., LLC v. Williams Bros. Const.,* 256 S.W.3d 730, 733 (Tex. App.—Houston [14 Dist.] 2008, no pet.). "The general purpose of equitable subrogation is to prevent unjust enrichment of the debtor." *Murray v. Cadle Co.*, 257 S.W.3d 291, 299 (Tex. App.—Dallas 2008 (pet. denied) (citing *First Nat'l Bank v. O'Dell*, 856 S.W.2d 410, 415 (Tex. 1993)). This doctrine "does not depend on a contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007). However, relief is not available to "the mere stranger or volunteer who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property of his own." *Matagorda County v. Tex. Ass'n of Counties County Gov't Risk Mgmt. Pool*, 975 S.W.2d 782 (Tex. App.—Corpus Christi 1998), *aff'd,* 52

S.W.3d 128 (Tex. 2000) (citing *First Nat. Bank of Kerrville v. O'Dell,* 856 S.W.2d 410, 415 (Tex. 1993)).

Equitable subrogation is not applicable in the present situation. The plaintiffs' subrogation claim is premised upon the idea that, through the BTS, GE has paid Beazley's insurance debt and as such, Beazley should repay this money to GE. Were this the case, equity might favor subrogation. However, a review of the BTS establishes that this agreement was a quid pro quo between GE and Doctors Hospital, as opposed to a unilateral, involuntary payment of Beazley's debts by GE. Moreover, the primary purpose of equitable subrogation (to prevent unjust enrichment of a debtor) is not served here. To the extent that Beazley owes money under the policy, the beneficiaries will be able to collect these funds through the present litigation. Lastly, the plaintiffs have presented no evidence that GE "extinguished" Beazley's insurance debts, such that it would be equitable to "allow [the plaintiffs] to seek recovery from the [Beazley.]" In fact, the plaintiffs have not even alleged that Beazley's debts were extinguished through GE's actions. As such, the plaintiffs have not presented sufficient evidence to create a genuine issue of material fact on this issue. Accordingly, summary judgment is proper.

### 2. Unjust Enrichment

Beazley next seeks summary judgment on the plaintiffs claim for unjust enrichment. Judge Sim Lake (S.D. Tex., Houston Div.) recently described the claim for unjust enrichment under Texas law:

> Unjust enrichment is not a cause of action recognized by Texas law. *See Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. stricken and rev. denied) ("unjust enrichment is not a distinct independent cause of action but simply a theory of recovery"). Nevertheless, the Texas Supreme Court has explained that an action seeking restitution or imposition of a constructive trust may be premised

> on the legal theory of unjust enrichment. *See HECI Exploration C. v. Neel*, 982 S.W.2d 881, 891 (Tex.1998). Although in HECI the Texas Supreme Court refers to "the cause of action" of unjust enrichment and it also refers to unjust enrichment as a "remedy" and a "basis for recovery," courts have not read these statements as recognition of an independent cause of action for unjust enrichment but, instead, as reiterations of the well established principle that a suit for restitution may be raised against a party based on the theory of unjust enrichment. *See Mowbray*, 76 S.W.3d at 680 & n.25.

*Baisden v. I'm Ready Prods., Inc.*, No. H-08-0451, 2008 WL 2118170, at *10 (S.D. Tex. May 16, 2008) (unreported opinion); *see also Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 709 n.4 (Tex. App.—Corpus Christi 2006, pet. denied) ("Unjust enrichment, however, is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay." (citation omitted)). Accordingly, summary judgment is appropriate on this claim.

### F. Interpretation of the Term "Sublimits"

In its next point of argument, Beazley seeks summary judgment construing the term "sublimits," as used in the policy. Specifically, Beazley asserts that this term is meant to be a limitation on insurance for a particular type of harm *short of the overall insurance limits*. To the contrary, the plaintiffs state that "sublimits" refer to additional insurance (in excess of the overall insurance limit) for a specific kind of injury. Further, the plaintiffs assert that summary judgment on this issue is improper because it is moot. As described below, the court disagrees with both of the plaintiffs' contentions.

The policy provides that it "insures for the following Extensions of Coverage, but only if such coverage is selected." Beazley and Doctors Hospital agreed to extend coverage for "Demolition or Increased Cost of Construction" to the extent of stated "Sublimit[s] of Liability." In example, "Demolition" (a subset of "Demolition and

Increased Cost of Construction") has a sublimit of $5,000,000 associated with it. In pertinent part, the policy provides:

> Demolition or Increased Cost of Construction:
> a. This Policy is extended to cover the reasonable and necessary expense incurred by the Insured that is directly caused by the enforcement of a law or ordinance enforced as a direct result of direct physical loss or damage insured by this Policy to Property insured which:
>   i. Regulates the demolition, construction, repair, or replacement or use of buildings or structures; and
>   ii. Is in force at the time of such loss or damage.
> b. Coverage under this Extension of Coverage is provided for:
>   i. Undamaged Portions - The value of the physically undamaged portions of the insured buildings or structures when those portions are demolished;
>   ii. Demolition -The reasonable and necessary expense to demolish and remove any physically undamaged portions of the insured buildings or structures;
>   iii. Compliance with the Law - The reasonable and necessary expense incurred to actually rebuild such insured buildings or structures in order to comply with the minimum requirement of the law, regulation or ordinance being enforced.

However, the parties differ with regards to exactly what coverage is provided under these provisions. Specifically, in the present complaint, the plaintiffs state that:

> The Policy provides *extensions of coverage*. Under the Demolition and Increased Cost of Construction clause, coverage is *increased by an additional $5 million* for demolition of damaged and undamaged portions of the insured building. The clause also *extends coverage* for the "value of the physically undamaged portion of the insured buildings or structures when those portions are demolished" up to the policy limit. Further, the Policy also provides a *separate, additional* $5 million for compliance with laws or ordinances that increase the cost of repair or replacement of buildings or structures.

(emphasis added). Restated, the plaintiffs allege that sublimits are in addition to the overall limits of the policy. To the contrary, Beazley argues that "the sublimits referred to in the 'Extensions of Coverage' section of the Policy are . . . subject to the Policy's

overall limitations and do not represent additional amounts above and beyond the overall limits." Premised upon this argument, Beazley seeks summary judgment on this issue.

Initially, the plaintiffs argue that summary judgment is improper because the issue is moot. "[A] federal court has no constitutional authority to resolve [moot] issues." *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008) (citing *In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004)). "An action is moot if, as a result of intervening circumstances, a party no longer has a legally cognizable personal interest in the subject of the litigation." *Dynamic Marine Consortium, S.A. v. LATINI, MV*, 179 F.3d 278, 280 (5th Cir. 1999) (citing *Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999)). "The requisite personal interest . . . must continue throughout [the case] . . . . Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) (internal citations and quotation marks omitted). However, "[i]t is well settled that a [party]'s voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). In particular, an allegation is not moot if a party "is free to resume [the alleged malfeasance] at any time." *Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002); *Walling v. Helmerich & Payne*, 323 U.S. 37, 43 (1944).

The plaintiffs argue that, pursuant their damage estimates, they are not seeking damages beyond the policy limits or in excess of the sublimit for any specific type of damage. To the extent that these assertions are correct, they are still insufficient to render the issue moot. Each damage estimation is marked "Preliminary – Subject to Revision."

Thus, as these estimates are subject to change, the plaintiffs could revise their damages to exceed pertinent sublimits and resume their assertion that sublimits are in addition to the policy limits. Accordingly, the issue is not moot.

Next the Court must construe the term "sublimit." "When the language of an insurance policy is not ambiguous, it is our duty to give the words used their plain meaning." *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002). The parties have not alleged any ambiguity and thus, the Court will construe the term pursuant the plain language of the policy. Specifically, two contractual provisions are pertinent: (1) "The . . . sublimits are part of and *not in addition to* the limit of liability stated in the schedule of the Declarations;" and (2) The . . . Extensions of Coverage apply, subject to the terms, conditions *and limits of liability in [the] Policy*. Coverage for each extension shall *only apply to the extent of the applicable sublimit* . . . ." (emphasis added).

As made clear by both of these provisions, the sublimits (and the extensions of coverage to which they apply) are, pursuant the terms of the policy, subject to the policy limits. Thus, the plain meaning of the policy establishes that summary judgment is appropriate on this topic.[6]

### G. Rights to Sue Pursuant the Policy

In its final argument, Beazley states that "the terms of the Policy [do not] permit [GE] to sue Beazley." In support of this contention, it cites to clauses in the policy

---

[6] The Court notes that this conclusion is consistent with the general definition and application of "sublimits." *See Dillard Univ. v. Lexington Ins. Co.*, No. 06-4138, 2009 WL 1565943, at *2 (E.D. La. June 3, 2009); Leonard E. Murphy et al., *Property Insurance Litigator's Handbook* 21 (2007) ("Many [insurance] policies also limit the coverage for certain types of loss to amounts less than the limits of liability stated on the declarations. These lower limits are commonly known as sublimits."); G. Victor Hallman & Jerry S. Rosenbloom, *Personal Financial Planning* 114 (7th ed. 2003) (describing insurance sublimits as "smaller internal limits").

pertaining to the rights of mortgagees and loss payees.  Specifically, Beazley notes that, pursuant the policy, in the event of an insured loss it must "[a]djust the *Insured Loss* with the insured" and make payments to insured parties, loss payees, and mortgage holders (as their interests require).  To the extent that Beazley only has to adjust the insured loss with Doctors Hospital (as Beazley seems to assert), GE's right to seek insurance proceeds (as a loss payee or mortgage holder) via lawsuit is not diminished.  Beazley does not cite to any cases or proffer a construction of the policy that would hold otherwise.  Accordingly, summary judgment on this issue is improper.[7]

### VI. Conclusion

Based on the following, the Court hereby GRANTS Beazley's motions in part and DENIES these motions in part.

It is so **ORDERED**.

SIGNED at Houston, Texas this 3rd day of November, 2009.

_____
Kenneth M. Hoyt
United States District Judge

---

[7] Any requested relief not expressly addressed herein is denied.